| | | |
|---|---|---|
| **SARA B. STAPLETON-SALYERS** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | Civil Action No. _____ |
| | ) | |
| **WAKEFIELD & ASSOCIATES, INC., and** | ) | <u>Jury Trial Demanded</u> |
| **TIMOTHY D. HALL,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## COMPLAINT

### INTRODUCTION

1.  This action arises out of Defendants' Wakefield & Associates, Inc.'s (hereinafter "Wakefield") and Timothy D. Hall (hereinafter "Hall") violations of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq.* ("FDCPA") and Tennessee state law in its illegal efforts to collect consumer debts from Plaintiff Sara B. Stapleton-Salyers (hereinafter "Plaintiff") that the Plaintiff allegedly owes to Ballad Health (hereinafter "Ballad") and Morristown-Hamblen Emergency Medical Services (hereinafter "MHEMS").

### JURISDICTION AND VENUE

2.  Jurisdiction of this Court arises under 28 U.S.C. § 1331, 15 U.S.C. § 1692k(d), and pursuant to 28 U.S.C. § 1367 for pendent state law claims.

3.  Venue is proper in this District because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred here, Plaintiff resides here, and Wakefield transacts business here.

## PARTIES

4.  Plaintiff is a natural person who resides in Greene County, Tennessee.

5.  Wakefield is a for-profit foreign corporation (Colorado) registered to do business in Tennessee with a principal office located at 10800 E Bethany Dr, Ste 450, Aurora, CO 80014-2697 that maintains Incorp Services, Inc., 216 Centerview Dr, Ste 317, Brentwood, TN 37027-3226 as its registered agent.

6.  Hall is a natural person who resides in Hawkins County, Tennessee.

## FACTUAL ALLEGATIONS

7.  Plaintiff is a "consumer" as defined by 15 U.S.C. § 1692a(3).

8.  Wakefield, and its employees, including Hall, regularly engage in the business of using the mails and telephone system, sending collection letters, reporting to credit reporting agencies, including, Equifax, Experian, and TransUnion, paying the filing fees and process service fees to file state legal actions and requests for the issuance of garnishments of wages and levies of bank accounts, preparing sworn affidavits for its clients to sign in support of state legal actions, or for it to sign as an agent for its clients, and attempting to collect debts in person, all in an effort to collect consumer debts owed or due or asserted to be owed or due another, and is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

9.  Hall is an employee of Wakefield that regularly engaged in the legal representation of Wakefield's clients, including Ballad, in and out of state court, and is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

10. The Defendants have alleged that the Plaintiff incurred obligations to pay money arising out of transactions in which the money, property, insurance or services which are the subject of the transaction are primarily for personal, family or household purposes, and the

obligations are therefore ("debts") as defined by 15 U.S.C. § 1692a(5), namely debts for medical services allegedly originally owed by the Plaintiff to Ballad or one of its subsidiaries and for medical transport services allegedly originally owed by the Plaintiff to MHEMS (hereinafter "debt").

11. After default, the debts were assigned to Wakefield by Ballad and MHEMS who the Plaintiff allegedly owes or were otherwise acquired by Wakefield for purposes of collection from the Plaintiff.

12. The Plaintiff did not sign any contract with MHEMS for it to provide her medical transport services. *See Massey v. Casals*, 2012 Tenn. App. LEXIS 901, *11-12, 2012 WL 6697594 (Tenn. Ct. App. 2012); *Discover Bank v. Henson*, 2008 Tenn. App, LEXIS 737, 2008 WL 5272530 at *3, (Tenn. Ct. App. 2008) (*perm. app. den*. Sup. Ct., June 15, 2009) ("[W]ithout a written contract signed by Defendant, Discover Bank may not recover attorney's fees or a contract rate of interest.")

13. The Plaintiff is not aware of any lawsuit that has been filed against her on behalf of MHEMS that demands damages in the form of prejudgment interest, and even if a lawsuit has been filed against her in an attempt to collect the debts allegedly owed to MHEMS, the Plaintiff is not aware of any court that has awarded MHEMS prejudgment interest.

14. Tenn. Code Ann. § 47-14-103(3) "provides the maximum effective rates of interest for certain transactions and states that for 'all other transactions,' the maximum effective rate of interest is ten percent (10%) per annum. . . . This statute does not authorize the assessment of interest on a debt; it provides the maximum interest rate if interest is to be assessed.[] Tennessee law does not provide a blanket 10% interest for all debts." *See*

*Tiernan v. Capital Accounts, LLC*, 2017 U.S. Dist. LEXIS 101152 at *3 (M.D. Tenn., June 29, 2017).

15. Tenn. Code Ann. § 47-14-109 " provides guidance as to the date from which any interest assessed on certain debts shall accrue and then states that 'in all other cases,' the time from which interest is to be computed shall be the day when the debt is payable. . . . Again, the statute does not authorize assessment of interest on a debt; it provides the dates from which any such interest shall accrue. *See Tiernan, supra*, at *3-4.

16. In Tennessee, "[p]rejudgment interest, i.e., interest as an element of, or in the nature of, damages, as permitted by the statutory and common laws of the state as of April 1, 1979, may be awarded by courts or juries in accordance with the principles of equity at any rate not in excess of a maximum effective rate of ten percent (10%) per annum." **See Tenn. Code Ann. § 47-14-123.**

17. An award of prejudgment interest as damages in a civil action is within the discretion of the trial court. *See Schoen v. J.C. Bradford & Co.*, 667 S.W.2d 97, 1984 Tenn. App. LEXIS 2605 (Tenn. Ct. App. 1984); *Teague Bros., Inc. v. Martin & Bayley, Inc.*, 750 S.W.2d 152, 1987 Tenn. App. LEXIS 3040 (Tenn. Ct. App. 1987); *Otis v. Cambridge Mut. Fire Ins. Co.*, 850 S.W.2d 439, 1992 Tenn. LEXIS 722 (Tenn. 1992), rehearing denied, -- S.W.2d --, 1993 Tenn. LEXIS 142 (Tenn. Mar. 29, 1993); *Otis v. Cambridge Mut. Fire Ins. Co.*, 850 S.W.2d 439, 1992 Tenn. LEXIS 722 (Tenn. 1992), rehearing denied, -- S.W.2d --, 1993 Tenn. LEXIS 142 (Tenn. Mar. 29, 1993); *Hartman v. State* -- S.W.3d --, 2003 Tenn. App. LEXIS 285 (Tenn. Ct. App. Apr. 14, 2003); *Harrison v. Laursen*, 128 S.W.3d 204, 2003 Tenn. App. LEXIS 545 (Tenn. Ct. App. 2003), appeal denied, -- S.W.3d --, 2004 Tenn. LEXIS 112 (Tenn. Feb. 2, 2004).

18.     Tenn. Code Ann. § 47-14-123 "provides no help for Defendant either. That law provides that a court or jury may award prejudgment interest as an element of damages if permitted by the statutory or common laws of the state. . . . That statute clearly applies only if litigation is filed and the court enters judgment." *See Tiernan, supra*, at * 4.

19.     The debts Wakefield is attempting to collect from Plaintiff for MHEMS did not involve a contract signed by Plaintiff with MHEMS and the debts never had interest added to it by MHEMS before the debts were assigned to Wakefield for collection from the Plaintiff or were otherwise acquired by Wakefield for purposes of collection from the Plaintiff.

### *Collection Communications*

20.     A "communication" under the FDCPA means conveying the information regarding a debt directly or indirectly to any person through any medium.  15 U.S.C. § 1692a(2).

### *Legal Action Brought by the Defendants*

21.     On January 30, 2020, the Defendants brought a legal action against the Plaintiff in state court with the filing of a civil summons supported only by a document titled "AFFIDAVIT OF ACCOUNT" (hereinafter "sworn affidavit") attached to the civil summons on behalf of Ballad (collectively "legal action"). **Redacted copy of legal action filed as exhibit 1 to this Complaint (hereinafter "Doc. 1-1").**

22.     The Defendants drafted and prepared the civil summons and placed Hall's name, an employee of Wakefield, as the attorney for Ballad.  **See Doc. 1-1, p. 1.**

23.     The Defendants placed the name MCOT, Inc. on the civil summons, which is an assumed name used by Wakefield since November 14, 2019.

24.     The Defendants also drafted and prepared the sworn affidavit.  **See Doc. 1-1, pp. 2-3.**

25.     Wakefield paid the filing fees to bring the legal action and the service fees to attempt proper service of the collection lawsuit on the Plaintiff.

26.     The civil summons states that Ballad is the state court plaintiff and that the legal action was brought by the Defendants for Ballad against the Plaintiff "for $2,522.86 due, owing and unpaid, as evidenced by the attached affidavit of indebtedness, plus costs of this action". **See Doc. 1-1, p. 1.**

27.     The civil summons also states: "This communication is from a debt collector and is an attempt to collect a debt. Any information obtained will be used for that purpose." **See Doc. 1-1, p. 1.**

28.     The civil summons further states:

# NOTICE

### TO DEFENDANTS WHO HAVE BEEN
### SUED ON A SWORN ACCOUNT:

Tennessee law provides that should you desire a trial to contest a suit which has been filed against you on a sworn account, you must deny the correctness of the account in writing, under oath. This sworn denial should be sent and received by the plaintiff or his/her attorney prior to the trial date set on the face of this warrant. Failure to comply with this procedure may result in the continuance of the suit or entry of a judgment against you.

**Doc. 1-1, p. 2.** (Bold in original)

29.     The sworn affidavit lists the names Salyers, Sara B Stapleton and Salyers, Josh and the amount of $4,622.86. **See Doc. 1-1, p. 3.**

30.     The sworn affidavit states:

The undersigned makes oath as follows:

(1)     I am employed by BALLAD HEALTH (Plaintiff).
(2)     I am custodian of the records pertaining to this individual.
(3)     The above named [sic] person is justly indebted to the Plaintiff in the amount of $4,622.86.

(4)     All just credits have been given in regard to this account(s).
(5)     In my official capacity with the Plaintiff, I authorize and direct the institution of legal action on this account (s), having been authorized by the Plaintiff to do so.

Justification for suit:   EMPLOYMENT & PROPERTY OWNERS

. . .

ACCOUNT NUMBER (S):

| CREDITOR/ ACCOUNT NUMBER | AMT/SVC DT | INTEREST | FEES | TOTAL |
|---|---|---|---|---|
| BALLAD HEALTH 2200188803 | 2100.00 07-23-14 | 0.00 | 0.00 | 2100.00 |
| BALLAD HEALTH 2200683264 | 150.00 05-08-15 | 0.00 | 0.00 | 150.00 |
| WAKEFIELD MEDICAL ASSOCIATES 2200029716 | 124.00 04-17-14 | 0.00 | 0.00 | 124.00 |
| BALLAD HEALTH 2201988772 | 1084.64 07-31-17 | 0.00 | 0.00 | 1084.64 |
| BALLAD HEALTH 2202033980 | 481.20 09-20-17 | 0.00 | 0.00 | 481.20 |
| CARDIOVASCULAR ASSOCIATES PC 2202044677 | 29.62 09-20-17 | 0.00 | 0.00 | 29.62 |
| BALLAD HEALTH 2202104746 | 69.40 11-16-17 | 0.00 | 0.00 | 69.40 |
| BALLAD HEALTH 2101677508 | 584.00 12-03-17 | 0.00 | 0.00 | 584.00 |
| TOTAL | 4622.86 | 0.00 | 0.00 | 4622.86 |

**See Doc. 1-1, pp. 3-4.**

31.   The Defendants consolidated these eight (8) accounts for purposes of bringing the legal action against the Plaintiff.  **See Doc. 1-1.**

7

32.  The sworn affidavit is signed by an individual named Deborah Bamman. **See Doc. 1, p. 3.**

33.  Also attached to the civil summons, besides the sworn affidavit, is one (1) additional document. **See Doc. 1, p. 5.**

34.  The additional document attached to the civil summons state at the top:

**MCOT**
**Medical Collections of the Tri-Cities**
**Affidavit Changes**

**See Doc. 1-1, p. 5.**

35.  The document states that the amount of the consolidated debts decreased from the amount shown on the sworn affidavit.

36.  The legal action was brought by the Defendants against the Plaintiff in connection with collection of the debt and in an attempt to collect the debt, and conveyed information regarding the debt, including that Ballad is the creditor alleged to be owed the debt the Defendants are attempting to collect, and the amount alleged as owed, and is a "communication" as defined by 15 U.S.C. § 1692a(2). **See Doc. 1-1, pp. 1-2.**

37.  The legal action brought against the Plaintiff by the Defendants sought to collect a purported consumer debt incurred for personal, family or household purposes, and not for business purposes, specifically the balance allegedly owed by the Plaintiff for medical services provided to the Plaintiff, her husband or children.

38.  On September 24, 2020, without providing the Plaintiff notice of a continued court date, a default judgment was entered against the Plaintiff in the legal action for "$2,522.86 plus interest at the rate of 5.25 % and all costs, for which execution may issue." **Redacted copy of default judgment filed as exhibit 2 to this Complaint (hereinafter "Doc. 1-2").**

39.     On information and belief, Hall was present as an employee of Wakefield and obtained the default judgment for Ballad against the Plaintiff on September 24, 2020.

40.     On October 5, 2020, the Plaintiff timely filed a motion to set aside the default judgment due to lack of notice of the continued court date, which was granted by the state court on October 29, 2020, and the state court legal action is still pending.

### *Experian and TransUnion Credit Reports*

41.     Experian and TransUnion are each a consumer reporting agency as defined in 15 U.S.C. § 1681a(f) that regularly engage in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing credit reports to consumers and third parties.

42.     Plaintiff obtained copies of her Experian and TransUnion credit reports, both dated September 10, 2020, which show that Wakefield is communicating information to the Plaintiff, Experian, TransUnion, and any other person or entity allowed to access the Plaintiff's Experian and TransUnion credit information about a debt allegedly owed to MHEMS by the Plaintiff.

43.     Each reporting of the debt to Experian and TransUnion is a "communication" in an attempt to collect a debt as that term is defined by 15 U.S.C. § 1692a(2). *See Fulk v. LVNV Funding LLC*, 55 Supp. 3d 967, 973 (E.D. Ky. 2014) ("The Sixth Circuit has assumed, without concluding, that reporting a debt to a credit agency constitutes a 'collection activity' under the FDCPA. *Purnell v. Arrow Fin'l Servs., LLC*, 303 Fed. Appx. 297, 304 n.5 (6th Cir. 2008); *See also Riveria v. Bank One*, 145 F.R.D. 614 (D. P.R. 1993); *accord Blanks v. Ford Motor Credit*, 2005 WL 43981, at *3 (N.D. Tex. Jan. 7, 2005) (communicating information to credit reporting agency is a communication in connection with the collection

of a debt); *Akalwadi v. Risk Mgmt. Alternatives, Inc.*, 336 F. Supp. 2d 492, 503 n.4 (D. Md. 2004) (reporting debt is "in connection with" debt collection); *Sullivan v. Equifax*, 2002 WL 799856, 2002 U.S. Dist. LEXIS 7884, at *15, (E.D. Pa. April 19, 2002) (reporting a debt is a powerful collection tool); *Ditty v. Checkrite, Ltd.*, 973 F. Supp. 1320, 1331 (D. Utah 1997) (reporting debt information to others is designed to give collector additional leverage over debtor); *In re Sommersdorf*, 139 B.R. 700, 701 (Bankr. S.D. Ohio 1991).

44.     Wakefield has been communicating to the Plaintiff, Experian, and any other person or entity allowed to access the Plaintiff's Experian credit information since sometime in 2018 that the Plaintiff owes a debt to MHEMS in the original amount of $245.00 (partial account # 118355XXXX) and that it has increased in the last year from the original amount to balances in excess of the amount the Plaintiff legally owes, as follows:

| MONTH | BALANCE | ADDED ILLEGAL INTEREST |
|-------|---------|------------------------|
| November 2019 | $265.00 | $20.00 |
| December 2019 | $267.00 | $22.00 |
| January 2020 | $269.00 | $24.00 |
| February 2020 | $270.00 | $25.00 |
| March 2020 | $272.00 | $27.00 |
| April 2020 | $274.00 | $29.00 |
| May 2020 | $276.00 | $31.00 |
| June 2020 | $278.00 | $33.00 |

45.     Wakefield has been communicating to the Plaintiff, TransUnion, and any other person or entity allowed to access the Plaintiff's TransUnion credit information since sometime in

2018 that the Plaintiff owes a debt to MHEMS in the original amount of $245.00 (partial account #118355****) and that the debt has increased from the original amount to a balance of $278.00 as of June 9, 2020, which is in $33.00 in excess of the amount the Plaintiff legally owes.

46. Each reporting of a debt that the Plaintiff allegedly owes MHEMS by Wakefield to the Plaintiff, Experian, TransUnion, and any other person or entity allowed to access the Plaintiff's Experian and TransUnion credit information, is a communication by Wakefield in connection with collection of a debt that conveys information regarding the debt, including the name of the creditor the Plaintiff allegedly owes and the amount the Plaintiff allegedly owes, and is a "communication" as defined by 15 U.S.C. § 1692a(2).

47. Each reporting of a debt by Wakefield to the Plaintiff, Experian, TransUnion, and any other person or entity allowed to access the Plaintiff's Experian and TransUnion credit information, with the original creditor listed as MHEMS, sought to collect a purported consumer debt incurred for personal, family or household purposes, and not for business purposes, specifically balances the Plaintiff allegedly owes for medical services provided to the Plaintiff, plus illegal interest.

## TENNESSEE COLLECTION SERVICE ACT

48. On January 30, 2020 when the legal action was brought by the Defendants against the Plaintiff, and on September 24, 2020 when the Defendants obtained a default judgment against the Plaintiff, Wakefield held a Tennessee collection service license and is subject to all of the requirements of the Tennessee Collection Service Act, Tenn. Code Ann. §§ 62-20-101, *et seq.* (hereinafter "TCSA").

49. The TCSA makes it clear that: a "[c]ollection service" means any person that engages in, or attempts to engage in, the collection of delinquent accounts, bills or other forms of indebtedness irrespective of whether the person engaging in or attempting to engage in collection activity has received the indebtedness by assignment or whether the indebtedness was purchased by the person engaging in, or attempting to engage in, the collection activity." **See Tenn. Code Ann. § 62-20-102(3).**

50. The TCSA further states:

> (b) A collection service licensee may commence litigation for the collection of an assigned account, bill, note or other indebtedness in a court of competent jurisdiction located in any of the following counties:

> (1) The county in which the debtor signed the account, bill, note or other indebtedness sued upon;

> (2) In the case of consolidated accounts that all arose from the same county, the county in which all of the consolidated accounts, bills, notes or other indebtednesses arose; or

> (3) The county in which the debtor resides at the commencement of the action.

> (c) No collection service licensee shall commence any litigation authorized by this section, unless the collection service licensee appears by an attorney admitted to practice law in this state.

> (d)

> (1) For purposes of commencing litigation, a collection service licensee that has taken an assignment or assignments pursuant to this section may consolidate the assigned accounts, bills, notes or other indebtedness of one (1) or more creditors against one (1) individual debtor or codebtors, in one (1) case. Each assigned account, bill, note or indebtedness must be separately identified and pled in any consolidated action authorized by this section. **The individual amount of each account, bill, note or other indebtedness that forms the basis for any consolidated action shall not exceed two hundred dollars ($200) each, as identified and pled by the collection service licensee, exclusive of court costs, attorney fees**

**and interest that may have accrued before the filing of the consolidated action. The aggregate amount of consolidated accounts, bills, notes and other indebtedness in any one (1) case shall not exceed five hundred dollars ($500), as identified and pled by the collection service licensee, exclusive of court costs, attorney fees and interest that may have accrued before the filing of the consolidated action**. Court costs shall be assessed to the losing party. Interest, attorney fees and reimbursable expenses shall be assessed against the losing party, if provided in any of the consolidated accounts, bills, notes or other indebtedness or as otherwise permitted or required by law.

(2) **If a debtor or codebtor files a sworn denial or otherwise raises a dispute concerning any account, bill, note or other evidence of indebtedness, the court shall dismiss the account, bill, note or other evidence of indebtedness, without prejudice. The collection service licensee may bring a separate case for any such disputed account, bill, note or other evidence of indebtedness within one (1) year of dismissal; provided, however, that the disputed account, bill, note or other evidence of indebtedness cannot be consolidated with any other account, bill, note or other evidence of indebtedness**.

(3) **For any account on which an affidavit of sworn account is filed pursuant to § 24-5-107(a), a separate affidavit shall be filed for each account in a consolidated action**.

(e) Nothing in this section relieves a collection service licensee from complying with the Fair Debt Collection Practices Act (15 U.S.C. § 1692) or deprives any debtor of the right to assert defenses as provided in that act.

(f) **On the face of any warrant or other pleading filed in any consolidated action or in an attachment to the warrant or pleading, the collection service licensee shall state the order in which the creditor intends to apply payments received on any judgment obtained in the consolidated action. The collection service licensee shall also state that payments will be applied as stated unless the debtor instructs otherwise in writing or the court orders otherwise.**

**See  Tenn. Code Ann. § 62-20-124.**  (emphasis added)

## <u>UNAUTHORIZED PRACTICE OF LAW</u>

51.    The "[p]ractice of law" means the **<u>appearance as an advocate in a representative</u> <u>capacity or the drawing of papers, pleadings or documents or the performance of any</u> <u>act in such capacity in connection with proceedings pending or prospective before any</u> <u>court</u>. See Tenn. Code Ann. § 23-3-101(3).** (emphasis added)

52.    No person shall engage in the practice of law . . . as defined in § 23-3-101, unless the person has been duly licensed, and while the person's license is in full force and effect, **<u>nor shall</u> <u>any association or corporation engage in the practice of law</u>. See Tenn. Code Ann. § 23-3-103(a).** (emphasis added)

53.    The Tennessee Board of Professional Responsibility's (hereinafter "TBPR") Formal Ethics Opinion 83-F-44 states:

> Inquiry is made by in-house corporate counsel about the propriety of allowing the corporation to bill its customers for legal services performed by corporate counsel.
>
> **<u>Corporations may use lawyer employees to conduct its own legal affairs but may not use them to perform legal services for others. This would constitute the practice of law by a non-lawyer</u>.**
>
> **<u>Any participation by corporate counsel in performing legal services to corporate customers is in violation of Disciplinary Rule 3-101(A) of the Code of Professional Responsibility which prohibits a lawyer from aiding a non-lawyer in the unauthorized practice of law.</u>**
>
> Any participation by corporate counsel in allowing the corporation to collect money for the performance of legal services is in violation of Disciplinary Rule 3-102(A) which prohibits a lawyer from sharing legal fees with a non-lawyer.

   **Copy filed as exhibit 3 to this Complaint (hereinafter "Doc. 1-3").** (emphasis added)

54.     The TBPR's Formal Ethics Opinion 84-F-74 states:

> Inquiry is made concerning the ethical propriety of self-representation, in court, by corporations through attorney employees.
>
> The Code of Professional Responsibility only addresses the ethical responsibilities of attorneys' acts or conduct in relation to the unauthorized practice of law.
> There is no impropriety in an attorney employee of a corporation assisting, advising, counseling, representing or appearing on behalf of the corporation in the conduct of its affairs, either in or out of court.
>
> **<u>Any participation by corporate counsel in performing legal services to corporate customers is in violation of Disciplinary Rule 3-101(A) of the Code which prohibits a lawyer from aiding a non-lawyer in the unauthorized practice of law. See Formal Ethics Opinions 83-F-44 and 83-F-44(a).</u>**

**Copy filed as exhibit 4 to this Complaint (hereinafter "Doc. 1-4").** (emphasis added)

## FAIR DEBT COLLECTION PRACTICES ACT

55.     The FDCPA is a federal statute which regulates debt collectors in the collection of consumer debts.  **See 15 U.S.C. §§ 1692 *et seq.***

56.     Congress passed the FDCPA because "[t]here is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors . . . , [e]xisting laws and procedures for redressing these injuries are inadequate to protect consumers . . . , and [m]eans other than misrepresentation or other abusive debt collection practices are available for the effective collection of debts."  **15 U.S.C. §§ 1692 (a), (b), and (c).**

57.     The purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses."  **15 U.S.C. § 1692 (e).**

58. The Sixth Circuit reaffirmed in *Stratton v. Portfolio Recovery Associates, LLC*, 770 F.3d. 443, 448-449 (6th Cir. 2014) that: "'The Fair Debt Collection Practices Act is an extraordinarily broad statute' and must be construed accordingly. *Frey v. Gangwish*, 970 F.2d 1516, 1521 (6th Cir. 1992)"; *see also Currier v. First Resolution Inv. Corp.*, 762 F.3d 529, 533 (6th Cir. 2014).

59. "'Courts must view any alleged [FDCPA] violation through the lens of the 'least sophisticated consumer'—the usual objective legal standard in consumer protection cases.' *Gionis v. Javitch, Block, Rathbone, LLP*, 238 F. App'x 24, 28 (6th Cir. 2007). (internal quotation marks and citations omitted); *see also Barany-Snyder v. Weiner*, 539 F.3d 327, 333 (6th Cir. 2008)". *Stratton, supra*, at 450.

60. "Debt collection is performed through 'communication,' . . . 'conduct,' . . . or 'means'. These broad words suggest a broad view of what the Act considers collection . . . [I]f a purpose of an activity taken in relation to a debt is to 'obtain payment' of the debt, the activity is properly considered debt collection." *See Glazer v. Chase Home Fin. LLC*, 704 F.3d 453, 461 (6th Cir. 2013).

## STATE LAW CLAIMS

61. Plaintiff incorporates by reference all of the above paragraphs as though fully stated herein.

62. By Hall, Wakefield's employee, representing Ballad in the legal action brought against the Plaintiff in state court, he assisted Wakefield in violating the state law against the unauthorized practice of law in violation of Tenn. Code Ann. § 23-3-103(a).

## FDCPA CLAIMS

### *Wakefield's FDCPA Violations Related to the State Court Legal Action*

63. Plaintiff incorporates by reference all of the above paragraphs as though fully stated herein.

64. By failing to file a separate affidavit for each account in a consolidated action, in violation of Tenn. Code Ann. § 62-20-124(d)(3), the Defendants falsely represented the character or legal status of the debts, in violation of 15 U.S.C. §§ 1692e and 1692e(2)(a), threatened to take and actually took any action that cannot be legally taken, in violation of 15 U.S.C. § 1692e(5), used a written communication which simulates or is falsely represented to be a document authorized, issued, or approved by any court, official, or agency of the United States or any State, or which creates a false impression as to its source, authorization, or approval, in violation of 15 U.S.C. § 1692e(9), and used false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer, in violation of 15 U.S.C. § 1692e(10).

65. By failing to state on the face of the civil summons filed in the consolidated action or in an attachment to the civil summons:

    (a)     "the order in which the creditor intends to apply payments received on any judgment obtained in the consolidated action"; and

    (b)     "that payments will be applied as stated unless the debtor instructs otherwise in writing or the court orders otherwise",

    in violation of Tenn. Code Ann. § 62-20-124(f), the Defendants falsely represented the character or legal status of the debts, in violation of 15 U.S.C. §§ 1692e and 1692e(2)(a), threatened to take and actually took any action that cannot be legally taken, in violation of 15 U.S.C. § 1692e(5), used a written communication which simulates or is falsely represented to be a document authorized, issued, or approved by any court, official, or agency of the United States or any State, or which creates a false impression as to its source, authorization, or approval, in violation of 15 U.S.C. § 1692e(9), and used false

representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer, in violation of 15 U.S.C. § 1692e(10).

66. By bringing the legal action against the Plaintiff while engaging in the unauthorized practice of law, Wakefield falsely represented or implied that an individual is an attorney or that any communication is from an attorney, in violation of 15 U.S.C. § 1692e(3).

67. Tennessee Code Annotated § 24-5-107 states as follows:

**24-5-107. Sworn accounts.**

(a) An account on which action is brought . . . with the affidavit of the plaintiff or its agent to its correctness, . . . is conclusive against the party sought to be charged, **unless that party on oath denies the account or except as allowed under subsection (b).**

(b) **The court shall allow the Defendants orally to deny the account under oath and assert any defense or objection the Defendants may have.** (emphasis added)

68. The statement in the civil summons listed in paragraph 28 above is a communication by the Defendants in connection with collection of a debt and in an attempt to collect a debt that is a false, deceptive, and misleading representations of the Plaintiff's rights under state law, and threat to take action that cannot legally be taken in violation of 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(5), 1692e(10), and the use of unfair or unconscionable means to collect or attempt to collect the debt, in violation of 15 U.S.C. § 1692f.

*Wakefield's FDCPA Violations Related to Credit Reporting*

69. Plaintiff incorporates by reference all of the above paragraphs as though fully stated herein.

70. By adding illegal interest when attempting to collect interest on a debt when there is no contract signed by the Plaintiff with MHEMS that allows for the addition of interest to the principal amount, and by attempting to collect prejudgment interest when no judgment has been entered against the Plaintiff for a debt the Plaintiff allegedly owes to MHEMS that

allows the addition of prejudgment interest as damages, Wakefield falsely represented the amount of the debts the Plaintiff allegedly owes on the dates in the last year when Wakefield reported the debts to Experian and TransUnion.

71. By communicating to the Plaintiff, Experian, TransUnion, and any other person or entity allowed to access the Plaintiff's Experian and TransUnion credit information, that the Plaintiff owes a greater amount than what she legally owes on the debts and that prejudgment interest may legally accrue on the debts until they are paid without entry of a court judgment that awards prejudgment interest, and by attempting to collect interest on debts when there is no contract signed by the Plaintiff with MHEMS that allows the addition of interest to the principal amount, Wakefield is:

(a)     causing actual damages to the Plaintiff by reporting to Experian and TransUnion credit information that the Plaintiff owes more than he legally owes, which lowers her credit score;

(b)     falsely representing the character, amount, and legal status of the debt the Plaintiff allegedly owes and any compensation which may be lawfully received by Wakefield for collection of the debt, in violation of 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(2)(B), and 1692e(10);

(c)     communicating credit information to the Plaintiff, TransUnion, and any other party allowed to access Plaintiff's Experian and TransUnion credit report information, which is known, or which should be known to be false, in violation of 15 U.S.C. § 1692e(8); and

(d)     using unfair and unconscionable means to collect or attempt to collect any debt by collecting or attempting to collect any amount unless such amount is permitted by law, in violation of 15 U.S.C. §§ 1692f and 1692f(1).

### *Summary*

72.    The above-detailed conduct by the Defendant in connection with collection of the debts and in an attempt to collect the debts was conduct in violation of multiple provisions of the FDCPA and state law including, but not limited to the above-cited provisions.

### TRIAL BY JURY

73.    Plaintiff is entitled to and hereby respectfully demands a trial by jury. **U.S. Const. amend. 7; Fed.R.Civ.P. 38.**

### CAUSES OF ACTION

### COUNT I

### UNAUTHORIZED PRACTICE OF LAW

### Tenn. Code Ann. § 23-3-101, et seq.

74.    Plaintiff incorporates by reference all the above paragraphs as though fully stated herein.

75.    The foregoing acts and omissions of the Defendants constitute numerous and multiple violations of the prohibition against engaging in the unauthorized practice of law by a corporation including, but not limited to the above-cited provisions of Tenn. Code Ann. § 23-3-103.

76.    As a result of the Defendants' violations of Tenn. Code Ann. § 23-3-103, the Plaintiff is entitled to an amount equal to the sum of treble any actual damages sustained by the Plaintiff and treble any amount paid by the Plaintiff, pursuant to Tenn. Code Ann. § 23-3-112(a)(1); and, reimbursement for the reasonable costs and expenses of investigation and

prosecution of acts under Tenn. Code Ann. § 23-3-101, including, but not limited to, reasonable attorney fees, as well as expert and other witness fees.

## COUNT II-XI

## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT

### 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(2)(B), 1692e(3), 1692e(5), 1692e(8), 1692e(9), 1692e(10), 1692f, and 1692f(1)

77. Plaintiff incorporates by reference all of the above paragraphs as though fully stated herein.

78. Wakefield's foregoing acts and omissions constitute numerous and multiple FDCPA violations including, but not limited to each and every one of the above-cited FDCPA provisions, with respect to Plaintiff.

79. As a result of Wakefield's FDCPA violations, Plaintiff is entitled to actual damages pursuant to 15 U.S.C. § 1692k(a)(1), in an amount to be determined at trial by a jury; statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(A) in the amount of $1,000.00; and, reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1692k(a)(3) from Wakefield.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays that judgment be entered against Wakefield:

## COUNT I

## UNAUTHORIZED PRACTICE OF LAW

### Tenn. Code Ann. § 23-3-101, et seq.

- for an award equal to the sum of treble any actual damages sustained by the Plaintiff and treble any amount paid by the Plaintiff, pursuant to Tenn. Code Ann. § 23-3-112(a)(1);

- for an award for reimbursement for the reasonable costs and expenses of investigation and prosecution of acts under § 23-3-101, including, but not limited to, reasonable attorney fees, as well as expert and other witness fees;

## COUNT II-XI

## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT

### 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(2)(B), 1692e(3), 1692e(5), 1692e(8), 1692e(9), 1692e(10), 1692f, and 1692f(1)

- for an award of actual damages pursuant to 15 U.S.C. § 1692k(a)(1) against Wakefield and for Plaintiff, in an amount to be determined at trial by a jury;

- for an award of statutory damages pursuant to 15 U.S.C. §1692k(a)(2)(A) in the amount of $1,000.00 against Wakefield and for Plaintiff;

- for an award of costs of litigation and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3) against Wakefield and for Plaintiff; and

- for such other and further relief, as may be just and proper.

11/06/20                              Respectfully submitted,

                                      **SARA B. STAPLETON-SALYERS**


                                      s/      Alan C. Lee
                                      Alan C. Lee, BPR # 012700
                                      P. O. Box 1357
                                      Talbott, TN 37877-1357
                                      (423) 581-0924
                                      aleeattorney@gmail.com

                                      Attorney for Plaintiff